# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:09-CR-221 |
| | § | Judge Crone |
| SON TROUNG (1) and | § | |
| DUNG NGUYEN (3) | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendants' Motion to Suppress Warrants and Statements (Dkt. #35).[1] Having considered the relevant pleadings and argument given at the February 11, 2010 hearing, the Court is of the opinion that Defendants' motion should be denied.

### BACKGROUND

Detective George Johnson ("Affiant") of the Plano Police Department prepared an affidavit and presented it to a state district judge who signed the search warrant for a residence located at 3912 Ridge Rock Drive in Plano, Texas (the "Residence"). According to the affidavit, on September 18, 2009, officers of the Plano Police Department received a complaint regarding the Residence. Two officers met with an individual ("Informant") who stated that he/she recently saw over one hundred (100) marijuana plants inside the Residence. The Informant stated that several Asian males were often at the Residence. The Informant stated that he/she wanted to remain anonymous, but provided a name and other identification to officers.

Soon after meeting with the Informant, the two officers went to the Residence and knocked

---

[1] Defendant Son Troung filed this Motion to Suppress Evidence (Dkt. #35). Defendant Dung Nguyen filed a Motion for Leave to Join in and Adopt (Dkt. #41) the suppression motion. The Court granted Defendant Dung Nguyen leave to adopt the suppression motion (Dkt #43).

on the door. There was no answer. The officers heard a loud blower or fan inside the Residence. The officers looked through an outside window and observed that a door to one of the rooms inside the Residence had been covered with sheetrock. The officers reported what they saw to Affiant and other detectives.

On September 21, 2009, a second Informant called the Plano Police Department and spoke with Detective Hay. The Informant stated that the marijuana plants were still inside the Residence and the individuals growing the plants had fled out the back of the Residence when officers knocked on the front door a few days earlier.

On September 22, 2009, Affiant and other detectives conducted surveillance on the Residence. Detectives witnessed an Asian male look out the front window of the Residence. Detectives saw another Asian male leave the Residence and drive away in a silver Acura.

On September 23, 2009, Affiant met with the second Informant in person. He/she provided detailed information regarding the marijuana growing at the Residence. The Informant stated that he/she was inside the Residence on September 14, 2009, observed over one hundred (100) plants he/she believed to be marijuana, and stated that the smell of the plants was so strong that his/her clothes smelled like the plants even after he/she left.

In order to corroborate information provided by the second Informant, Affiant drove Informant down Ridge Rock and Informant identified the Residence without being prompted. Detective Garcia showed the Informant photographs of marijuana plants and the Informant confirmed that the plants he/she saw inside the Residence were marijuana plants.

Later on September 23, 2009, Affiant and Detective Garcia collected trash at the Residence. They discovered a piece of paper showing the instructions for a "Hydrofarm T5 Designer Fixture,"

which is a large lamp that utilizes various fluorescent bulbs. Detectives found two empty plastic bags labeled "Sturdy Twists," which are wires that are used to secure plants. Detectives also found a large piece of dark-colored plastic with tape around the edges.

During the evening of September 23, 2009, detectives observed several Asian males around the Residence. One of the individuals looked around the outside of the Residence and then left in the same silver Acura that detectives observed on September 22, 2009. Detectives contacted a patrol officer to conduct a traffic stop on the vehicle. The officer pulled over the Acura after it crossed the double yellow lines. The officer identified Dung Nguyen as the driver. This name was similar to the name Hung Ngyuen, which was supplied by the Informant, and was identified as one of the individuals involved in the marijuana-growing operation. Nguyen told the officer he was on his way back from visiting a friend near Beltline Road. Detectives believed Nguyen was being deceitful and that he did not want officers to know he had been at the Residence.

On September 24, 2009, Affiant prepared the affidavit and presented it to a state district judge who signed a search warrant for the Residence based upon the affidavit. Law enforcement executed the search warrant and immediately smelled marijuana when they entered the Residence. Officers found marijuana plants in plain view throughout the Residence and found other items of evidentiary value. Officers located Son Troung, Vihn Le, and Dung Nguyen inside the residence and placed them under arrest.

Approximately one month after the search warrant was executed, a detective with the Plano Police Department met with the Informant during the investigation of another possible marijuana-growing operation. The Informant told the detective that he/she had given false information about his/her identity to officers on September 18, 2009. The Informant stated that he/she provided a false

3

identity because he/she was afraid of being killed if his/her true identity was discovered.

Defendants argue that all evidence and statements made pursuant to the search warrant should be suppressed. Defendants argue that the search warrant is based upon a "bare-bones affidavit" that is so lacking in indicia of probable cause as to render belief in it unreasonable. Defendants urge that the affidavit is "bare bones" for the following reasons: (1) the Informant lied or intentionally misled officers, making him/her not credible; (2) the Informant's information regarding seeing plants in the Residence was stale; (3) none of the Informant's information about "running out the back door" or the identities of the Asian men was correct; (4) running a fan in a house is not illegal; (5) the items discovered in the garbage are not illegal contraband; (6) no drugs, smell of marijuana, or drug paraphernalia were observed on anyone coming or going from the Residence before the search was conducted.

The Government argues that law enforcement officers conducted the search of the Residence pursuant to what they reasonably believed was a valid search warrant. As a result, the "good-faith exception" to the exclusionary rule applies and the evidence found during the search should not be suppressed. The Government also argues that Defendants were searched and evidence incident to a valid arrest was found. Further, the Government argues that Defendants waived their *Miranda* rights before they gave their statements, making the statements fully admissible. The Government emphasizes that while a mistake was made as to the identity of the Informant, the error was unintentional and, most importantly, the information supplied by the Informant was corroborated by law enforcement and ultimately proved to be true.

The Government notes that the Affiant believed the affidavit provided probable cause for the issuance of a search warrant for the Residence. The Affiant based this belief upon the observations

4

he made, as well as those of other detectives and officers. The Affiant also based this belief upon information provided by an individual whom he believed to be two different confidential informants. The Affiant considered the "informants" to be reliable because neither was a suspect in a criminal investigation and freely provided information to officers and detectives. Further, the Affiant considered the informants to be reliable because much of what "they" said was corroborated by information gathered by law enforcement. Specifically, officers heard the sound of a loud blower or fan inside the Residence, which in the detective's experience is used in the indoor cultivation of marijuana. Officers also observed that one doorway in the residence was covered in sheetrock, which in the Affiant's experience is done to prevent the smell of marijuana from escaping the room and to conceal the room.

The Government also points out that the Affiant asserts in the affidavit that law enforcement corroborated the information given by the Informant by finding several items in the garbage outside the Residence. Instructions for the "Hydrofarm T5 Designer Fixture" suggest indoor marijuana cultivation because high wattage lights of this kind are regularly used for indoor cultivation of marijuana. Further, these types of lights give off a high level of heat, which may require exhaust fans, like the one heard by officers, to remove heat from the growing room. Law enforcement also found bags for "Sturdy Twists," which are wires designed to secure plants. The Affiant knows marijuana plants to grow four to six feet in height and believes these wires necessary to secure the plants. Law enforcement also found black plastic with tape along the edges, which in the Affiant's experience is commonly used by marijuana growers to seal the smell of the marijuana within a room, keep outside light out of the growing room, and cover exterior windows to hide the marijuana plants.

5

## ANALYSIS

When considering the validity of a search warrant, the Court engages in a two-step inquiry: (1) the Court must determine whether the good-faith exception to the exclusionary rule applies; and (2) then the Court must determine whether the warrant was supported by probable cause. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2006); *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993); *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The Court need not reach the question of probable cause if the good-faith exception applies, and the case does not involve a "novel question of law." *Payne*, 341 F.3d at 399; *Laury*, 985 F.2d at 1311; *Satterwhite*, 980 F.2d at 320. Since this case does not appear to present a novel question of law, the Court should initially address the good-faith issue.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court concluded "that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Satterwhite*, 980 F.2d at 320 (citing *Leon*, 468 U.S. at 922-23, 104 S.Ct. at 3420). The good-faith exception does not apply under any one of four situations: (1) the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied; (2) the magistrate wholly abandoned his judicial role and acted as part of the law enforcement team; (3) the law enforcement officer relied on a warrant based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; and (4) the warrant itself was so facially deficient that the executing officers could not have reasonably relied on its validity. *United States v. Cherna*, 184 F.3d 403, 407-08 (5th Cir. 1999). However, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may

rely in good faith on the warrant's validity." *Id*. at 321 (citations omitted). A "bare-bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id*. (citations omitted). In the present case, Defendants argue that the good-faith exception does not apply based upon the third situation and possibly the first situation.[2]

Defendants argue that the misinformation regarding the true identity of the Informant makes the affidavit "bare bones." If an affidavit is based upon information provided by a confidential informant, the Court examines the informant's veracity and basis of knowledge to determine if in the "totality of the circumstances" the information is credible. *See United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992); *see also United States v. McKnight*, 953 F.2d 898, 904-05 (5th Cir. 1992). Here, the Affiant properly relied upon the Informant because the information was "reasonably corroborated" by evidence of indoor marijuana growing that was "within the officer's knowledge." *Illinois v. Gates*, 462 U.S. 213, 242 (1983). The Informant provided information that indoor marijuana growing was being conducted at the Residence and law enforcement corroborated this information through investigation and surveillance of their own. Based on the "totality of the circumstances," the Affiant's reliance upon the Informant's testimony does not make the affidavit "bare bones" and was sufficient to support a good-faith reliance that the affidavit upon which the warrant was based was adequate to establish probable cause.

Defendants cite the Court to *United States v. Jackson*, No. 07-30981, 2010 WL 364357 (5th Cir. February 3, 2010). As the Defendants generally refer the Court to this case, the Court assumes

---

[2] Defendants did not discuss the first situation in which the good-faith exception does not apply in their briefing. However, the Court will address the first situation as Defendants presented argument at the motion hearing that appears to apply to the first situation.

that Defendants refer to the Fifth Circuit's statement regarding the good-faith exception that "when defendant has made the requisite showing as to falsehood in the affidavit, the court should set to one side the questionable material, and then determine if there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* at *2 n. 2 (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). While Defendants argue that none of the information provided by the Informant should be recognized because the Informant was not forthright with his/her identity, the Court agrees with the Government that the only piece of information in the affidavit that proved not to be true was that there were two informants. If the Court "set[s] to one side" the fact that there were not two informants, the Court still concludes that the affidavit supports a finding of probable cause. Whether officers knew the true identity of the Informant or not does not change the fact that law enforcement corroborated the information through their own police work and developed probable cause to obtain the warrant.

Defendants argue that the Informant's statements that he/she saw marijuana in the Residence are stale. According to the affidavit, on September 18, 2009, the Informant informed officers that he/she "observed marijuana plants inside the Residence...approximately one week ago." To determine whether "stale" information in an affidavit makes a search fall outside the good-faith exception, the Fifth Circuit has said that the proper inquiry is whether the staleness caused the warrant to be "so deficient that no reasonable officer could have believed that it established probable cause." *Torres*, 2009 WL 3199651 at *6 (citing *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988)). Here, the search warrant was obtained and executed on September 24, 2009. Assuming that the Informant saw the marijuana plants in the Residence "approximately a week before" speaking to detectives, then the Informant likely observed the plants approximately two weeks before the

8

warrant was executed. The Court does not believe that the information provided by the Informant is stale to a level where "no reasonable officer could believe that it established probable cause." *Id*. While the Informant likely observed the marijuana plants two weeks before the warrant was executed, law enforcement officers continued their investigation and continued to corroborate the Informant's information until the day before the warrant was issued and executed. Therefore the Court finds that the "staleness" of the information in the affidavit does not make the warrant fall outside the good-faith exception.

Defendants also argue that the corroborating evidence found in the garbage of the Residence can be explained by uses that are not illegal and therefore law enforcement did not have probable cause. Defendants cite no authority for this proposition. Law enforcement officers found discarded items that, based upon their experience and training, are often related to indoor marijuana-growing operations. The discovery of these items, in conjunction with the information provided by the Informant and the observations made by police officers at the Residence, clearly raise the affidavit to a level of probable cause that would not make "official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421

The affidavit here is not "bare bones" and is not "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Cherna*, 184 F.3d 407-08. Law enforcement received information from the Informant that Defendants were conducting marijuana cultivation in the Residence. Law enforcement considered this information to be reliable because officers and detectives gathered evidence that is known to law enforcement officers to be connected to indoor marijuana cultivation and observed signs of the operation at the Residence. Unlike a "bare-bones" affidavit that contains "wholly conclusory statements, which lack the facts and circumstances from

which a magistrate can independently determine probable cause," the affidavit in this case provided a sufficient factual basis to enable the magistrate to make a meaningful probable cause determination. *Laury*, 985 F.2d at 1312 (quoting *Satterwhite*, 980 F.2d at 321). The affidavit provides details of the investigation conducted into Defendants' illegal activities, including, but not limited to, the observance of fans and covered doors and other discarded items, which the Affiant and other officers know to be related to indoor marijuana cultivation based upon their training and experience. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (describing "bare-bones" affidavits as those in which the affiant merely declares his belief that unlawful activity is occurring without providing any facts from which a judicial officer can independently assess the likelihood that the affiant's belief is correct). Therefore, because the good-faith exception applies, the Court need not address whether the magistrate had a substantial basis for finding probable cause because this case does not present a novel question of law. *Payne*, 341 F.3d at 399; *Laury*, 985 F.2d at 1311; *Satterwhite*, 980 F.2d at 320.

During oral argument, Defendants argued that the good-faith exception does not apply because "the issuing magistrate was misled by an affiant who knowingly, or with reckless disregard for the truth, provided the affidavit on which the magistrate relied." *Cherna*, 184 F.3d at 407-08. To suppress evidence "because a warrant omitted or mischaracterized relevant information, [the Fifth Circuit] has determined such an error to have been knowingly and intentionally made or [ ] made in reckless disregard for the truth." *United States v. Torres*, No. 08-50118, 2009 WL 3199651 at *5 (5th Cir. 2009) (citing *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991)); *see also United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) ("a proven misstatement can vitiate an affidavit only if it is established that the misstatement was the product of 'deliberate falsehood or of reckless

disregard to the truth.'"). Here, there is no evidence that the mistaken dual identity of the Informant was due to an intentional falsehood or to a reckless disregard for the truth on the part of the Affiant. Defendants make no argument in this regard outside of arguing that because the mistake was made, that the Informant is not credible and any information he/she provided should be disregarded. Therefore, the Court finds the first situation in which the good-faith exception will not apply to a search warrant does not overcome the presumption that "it [was] objectively reasonable for [officers] to execute [the] warrant." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006).

Defendants argue that their statements made while in custody should be suppressed. The Due Process Clause of the Fifth Amendment guarantees that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. V. Pursuant to due process, statements of Defendants may be deemed "involuntary" when obtained through official coercion. The Fifth Amendment protects an individual's right to be free from compelled self-incrimination, thus, the Government may use at trial only those confessions that are voluntarily made. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In order for the Government to introduce Defendants' statements, it generally must prove that the accused voluntarily, knowingly and intelligently waived their *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). To prove a valid waiver, the Government must show that the relinquishment of the Defendants' rights was voluntary and the Defendants were fully aware that the right was being waived and the consequences of waiving that right. *Id.* Here, the Government states that Defendants were read their *Miranda* warnings and freely and voluntarily waived those rights before making any statements. Defendants do not dispute this argument. Therefore, the Court finds that Defendants waived their *Miranda* rights and cooperated with authorities freely, and the motion to suppress statements should be denied.

For the foregoing reasons, the Court recommends that Defendants' Motion to Suppress be denied.

## RECOMMENDATION

The Court recommends that Defendants' Motion to Suppress Evidence and Statements (Dkt. #35) be DENIED.

Upon agreement of the parties, within five (5) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 17th day of February, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE